May it please the Court, my name is Tamara Malumbo, and I'm appearing for the appellant, the juvenile ALE. I would like to reserve five minutes for rebuttal. You may do so, Counsel. Just watch the clock as it ticks down. Thank you. Thank you, Your Honor. Reversal of ALE's delinquent adjudication is required for two reasons. First, ALE's rights under the JDA and Miranda were violated, thus requiring dismissal of the information under United States v. CM and United States v. Jose D.L. Second, the Court applied an incorrect legal standard to ALE's duress defense. Did the Court make specific findings on the ALE's duress defense? Yes, Your Honor, the Court did make some specific findings. And given those findings, which we review for clear error, the factual findings, doesn't that, even under your interpretation of the duress defense, preclude your argument on appeal? No, Your Honor. The Court rejected ALE's duress defense based on a legally irrelevant fact, whether or not the sister took the threat seriously. Well, and let's assume that that fact is legally irrelevant. But given the Court's other findings, don't we have to sustain them under a clear error standard? Your Honor, the factual findings that the Court relied on came entirely from ALE's testimony. The Court accepted that ALE was credible. Had the Court found that ALE was not credible, there was no need to engage in the analysis it did on the record. It could have simply said, I don't believe ALE, and that would have been the end of it. But that wasn't what the Court did. The Court applied ALE's testimony to the elements, presumed that there was a threat, and then found, because ALE had not, sister had not taken the threat seriously, rejected his duress defense. That finding is explicit in the record. I know the judge made that finding. I guess my question is, the judge said, look, I've looked at all of his testimony. I don't think this was a serious threat, and by the way, neither did his sister. Why isn't there something wrong with that? The Court did not find that the threat wasn't serious. The Court presumed that there was a threat. That there was a threat, but that it didn't constitute duress. Well, no. What the Court found was that while ALE had an opportunity to escape the threat and harm on U.S. soil, it explicitly recognized that his family had no similar opportunity in Mexico. That was the nature of the Court's finding. The Court did not find that the threat itself was not credible. But the Court found that there was an insufficient showing to make out a duress defense, and we look at that on a clear error standard, don't we? The Court, in reaching that assessment, relied on the sister's state of mind.  But the Court explicitly stated the only person he told the target of kidnapping was the sister, who dismissed that as a credible threat. He says he told her that these people threatened to kidnap her and her children. She said she wasn't concerned about it. She wasn't afraid. So once he's in the United States, the only target that is yet in Mexico apparently has no belief that she is under any immediate threat of death or bodily injury. So the defense of duress fails. I'm unclear on this record. Did her lack of – was her lack of concern communicated to ALE? It was communicated to ALE, but there is nothing in the record showing that the sister had any direct involvement with the Sicario in order to evaluate that. No, I understand that her lack of concern may have been foolish, but I'm trying to work backwards here. His argument of duress is, I'm afraid that somebody is going to do something to my family in Mexico. That's essentially his argument. And also to him. The threat was also to him. And to him. And with respect to the sister, the sister says, don't worry about it, I'm not worried about it, essentially, to him. Correct? I don't know specifically what she said. She did blow off. That's a fair paraphrase. She blew it off in your words. So isn't that some evidence that at least with respect to threats to his family in Mexico, he didn't feel duress because his family in Mexico told him, don't worry about it? No. Because if she fails to appreciate the nature and seriousness of the threat, that does not in any way affect the danger that she was in. And in this situation, Ailey testified that the Sicario Javier came for him. Now, you know, you said that the judge found that he was credible. And in fact, the judge didn't make any specific finding on that. And isn't, in the judge's decision, isn't it implicit that he found him not to be credible? He would have had to have found that there was duress. Not when he applied an incorrect legal standard to reject the defense. That is the crux of the Court's ruling, the fact that he looked to the sister's state of mind to reject Ailey's duress. And just so I'm clear, your position is even though the sister's state of mind was communicated to Ailey, that it's irrelevant to the question of whether he was under duress? Correct, Your Honor, because it is unquestionably Ailey's state of mind that's at issue. Has no evidentiary value at all? No. It's legally irrelevant because it is his state of mind that is at issue, and he is the one who had the direct contact with Javier to best assess that threat, not the sister. Can we turn to your other argument? I'm interested in this. The judge Zapata suppressed, or maybe at least at trial, all the statements Ailey made during his interrogation were suppressed. What remedy are you seeking with respect to? I am seeking dismissal pursuant to C.M., and at minimum under D.L., we are entitled to reversal and remand. Well, but if you had a reversal and remand, wouldn't the evidence – assuming you lose in a duress argument. Put that aside for a second. If you had a reversal and remand, you'd have a new trial with exactly the same evidence that was at the prior trial. What would you gain by remand, other than a second shot at convincing the trier of fact that the evidence isn't sufficient? We would hope that the court would use the correct legal standard in assessing whose state of mind was relevant. I understand, but I've asked you to assume that you don't prevail on the duress issue. So we're talking about the JDA issue. Okay. With respect to dismissal, dismissal is important in this case because that adjudication on his record affects his ability to legally immigrate. No, I understand why the adjudication is important. I'm asking you why we should dismiss the indictment in a case in which the tainted evidence, if you will, his statements were suppressed by the district judge. Because C.M. mandates that result, Your Honor. And the reason that I state that is in C.M., the court recognized its responsibility to ensure that the prophylactic aims of the JDA were not neglected or eroded. And even on that record in C.M., I think there's a strong suggestion that C.M. didn't actually suffer any prejudice in that case because there was a mountain of evidence to justify charging him. In that case, he drove through a Border Patrol checkpoint without being laid on. His car had to be spiked. There were illegal aliens in his car. Everybody fled the vehicle. They were all apprehended. The aliens testified against that child. And he had the car keys in his pocket when he was apprehended. I think that the showing of prejudice was far less than the case here where the government unquestionably violates the JDA, the assignment at issue, and then uses those statements to support the information against him. And I think it's not fair to say that there was a sufficient evidence to do so. And again, I don't want to dominate this discussion, but my concern is this. There is sufficient evidence to convict your client. You don't contest that. You don't have an appeal that says I'm arguing that the judge erred because there wasn't sufficient evidence to convict. You've got a duress defense. Okay. So even in the absence, she's guessing that we ought to dismiss the indictment and information in this case, I guess, with prejudice? I beg your pardon? You suggest that we ought to dismiss the information with prejudice? Yes, Your Honor. And I believe that CM dictates that result for the policy reasons articulated there and the fact that this is the third case involving the agents from Douglas alleging the same violation of the JDA before this Court within approximately the last 12 months. Where can you find that in your briefs? That was cited in my reply brief. I cited the unpublished memorandum cases, United States v. MRP and United States v. YM. And are those both cases in which this Court found that the JDA was violated? Correct. But brushed off the violations as harmless. Well, brushed off is a – it's this Court. I assume that they were found to be harmless. But the problem is, is the systemic harm in failing to enforce the JDA. What you're talking about is you have three officers, well-trained officers, that consciously ignore his Miranda rights when all three of them question. Then they don't properly apply the juvenile act with regard to how they're going to involve the mother in this. And you take all of this together, and that's why you say it should be dismissed with prejudice, right? That's correct, Your Honor. And those statements were used to support the information. Even the statements regarding his citizenship status. In the information, there – that was the only basis for probable cause. The government made no reference to strap marks or burlap fibers on his person to support probable cause. Absent that statement, there was no probable cause to charge him. But none of the statements involved were admitted. But it was used to institute proceedings against him, and that is the standard under CM as well as DL. And the question between CM and DL is, in CM – What was the precise evidence that you say was admitted in violation of the JDA or Miranda for that matter? There was no evidence admitted in violation of the JDA. However, the case would not have proceeded. There wouldn't have been probable cause for the charge absent. Well, there wouldn't have been probable cause based on – there was probable We know there was probable cause because your client was convicted. I would disagree. Absent the statement of guilt included in the information – I'm sorry, in the affidavit supporting the information, there would have been no basis to proceed. Well, then you must be saying that there wasn't sufficient evidence to convict him. No. I understand they didn't cite the other evidence in the information. That's a separate issue. But you do have to concede there was probable cause to suggest that your client committed a crime. The crime of illegal entry, perhaps, but not the crime of possession with intent to distribute marijuana. Well, then how can you concede there was sufficient evidence to convict him, absent the statements, but that there wasn't sufficient evidence to charge him? I think there are two different issues. You're talking about evidence sufficient to convict him. I'm talking about evidence sufficient to get past the probable cause hurdle to charge him in the first place. But if there is – I may be missing something here, but if you have enough evidence to convict, surely you have enough evidence to meet the probable cause standard. The conviction standard is beyond a reasonable doubt. The probable cause standard is considerably less. The trial was very different in that he had to concede the elements in order to put forth his duress defense. So it was a very different situation, and the government was in a very different situation at the close of the defense case-in-chief than it was at the charging stage. So we're talking about two very different things and the government being in two very different positions. Counsel, you're down to under 3 minutes. You indicated you wanted to reserve 5. Yes, Your Honor. I will reserve the remainder of my time. You may do so. We'll hear from the government. May it please the Court. My name is Gordon Davenport. I'm representing the government in this case, Your Honor. I want to start with your question regarding the last issue regarding the JDA. What I think that you, Your Honor, was having the confusion and probably the disconnect between the public defender's office and yours and the defendant is really the disconnect between the case law. If you look at the case law, the question is what evidence did the government have in its possession at the time of charging? Did we have sufficient evidence absent that procured in violation of the JDA such that the institution of the charging or the crime was appropriate? What has been you'll see was a little bit of a confusion is that there has been a presentment by the appellant, by the defendant, about whether or not looking at it just within the four corners of the information. No, I understand the defendant's argument. My concern is the one that Judge Pearsall raised, which is that this seems to me a pretty blatant violation of the act, and I understand the district judge has some discretion here and so do we. But at some point, if all the penalty that befalls the government for violating the act is that they can't use the statements made, isn't the act itself subverted? Two points, Your Honor. First, I would just humbly disagree with Your Honor. It was not, I don't think, a Miranda problem with the three well-trained agents. They did Mirandize them with the... After an hour and 17 minutes. That's correct, Your Honor. And certainly I will concede, and I think you saw during the course of the record, I think it's worth, certainly within the judge's discretion, to resolve it how it did, and I think that that's correct and that's a strong statement. But the answer to your question, Your Honor, is does that subvert the act? And the answer is no, that this was a very valuable piece of evidence, an inculpatory statement with regard that I could have used, especially with regard to once a duress defense was raised. Well, but that, it seems to me the value of the statement makes the unwillingness to follow the act even more troublesome, which is that, you know, we're saying, well, I know the act requires me to do something, but I might get something very valuable if I don't. So, I mean, I don't understand why that minimizes the violation of the act. I don't know that it minimizes the violation. The question is the remedy. And, again, we have multiple actors here, Your Honor. You know, when we had these violations, you saw our office taking less juveniles simply because in viewing them much more carefully with regard to the screening process and how we took them. So was there a sanction in this case? Well, there was. We lost the statement. But in also there was an effect, and they have to resolve to upping their abilities and how they do their procedures because we will be less likely to take those cases because we understand, you know, a year later I have to show up in front of you all and explain why they did the violation. So you're the cure, then, for their violations? You're the cure for their violations, then, because you're going to treat the cases differently? Is that it? I don't think we're the cure, Your Honor. I think that that's the consequence, is that once those violations have been identified and there is a problem, and, again, you all make clear what the nature of the problem and the parameters of the statute, then we have an obligation to be much more, not take those cases if they're unable to be supported and proven. And with the exclusionary nature of them, that's something we take into account and makes we're much more wary about the cases we take. How do I know that? I don't see that reading the briefs. That's correct, Your Honor. I'm sorry. That's not something that's within the briefs, but, I mean, I understand. So what's the appropriate thing for the court of appeals to do? I haven't gone back and looked at these memorandum dispositions in the past, and I'm not sure harmless error is blowing off, as your opponent says. But nonetheless, we've apparently seen some cases where at least the error was established in the past. Now we're here with another one. If we keep, in effect, affirming, is there any prophylactic effect of the act? And that's the question. You say, well, we take it seriously, and I take you seriously when you say that. But what's our obligation here? I mean, unfortunately, Your Honor, you've got the courts, the Ninth Circuit is really in the evaluating what's in front of them. And when you have to evaluate the – if the act is not being taken seriously, then that is something that Congress needs to add additional teeth to. I mean, that's the nature of the statutory animal. But Congress has given us the ability, at least as we interpret it, to dismiss an indictment. That's a pretty big bite. I'm not sure we need more authority. I guess my question is how – by what standard should we exercise that authority? And why do you think under that standard in this case that the more serious remedy isn't warranted? Your Honor, I would argue for the current standard, which is that if we were unable to prove our case absent the violation and the evidence acquired by that violation, then the case – that information should be dismissed. I am very hesitant of essentially creating a much more – a much more aggressive set of law based on being frustrated with a group of agents in Douglas, Arizona. And that's my fear, Your Honor, is if she brings up three cases, and some of that is the awareness of just how much volume. And I will point out another concern with this case is the law of unintended consequences, which is the more likely and the more difficult these cases to prosecute, the less likely we are able to prosecute juveniles. And then the more likely that a rational drug organization director is to use juveniles. And so you kind of see in the effort to help and protect juveniles, we make them more And that's the fear, Your Honor. And that was really one of the dangers here. Because as you saw, it was time served. Though there was a guilty – the judge determined he was guilty and then denied the duress defense, it was time served from the bench. The sentencing was done that day. It was time served. We had done it within the original 30 days of the JDA. And so there is that concern about the law of unintended consequences. Can you address the duress defense? Yes, sir. We have kind of a concern. I would say – and, Your Honor, I would point you to the end of the factual findings by the district court, which was that he not only found that the duress defense was inapplicable or was not met and was insufficiently proven, but he also found that the government proved beyond a reasonable doubt that duress was not present. So I would argue and contend with my – disagree with my colleague with regard to whether it was fair to say that the defendant was believed. Your Honor made the excellent point that if the defendant was believed, then we probably have a different animal. But it's not clear that he was believed. I would say – Actually, the judge's findings should have just specifically said, I don't find you to be credible. That's correct, Your Honor. And I think if you look at the nature of the findings as a whole, the district court really is finding he's not credible, that the threat was just not of the serious nature based on the believability of the defendant to warrant this duress defense. And if you perhaps better viewed, the sister statements are really circumstantial evidence with regard to the seriousness. The fact that she didn't take it present. If you looked also the demeanor of the defendant when he was being interviewed, he was laughing, he didn't want to talk to his mom because he thought he was going to get in trouble. The fact that there was no other saying, I need to get people out. If you look at my cross-examination on this case, Your Honor, you'll see he has family other places, he didn't tell his family members to go somewhere else. All of that is circumstantial evidence which tends to disprove his duress defense regardless of the standard that you evaluate it from. Anything further, counsel? No. Any other questions for me, sir? No further questions. Thank you. Ms. Malembo, you have some reserve time. I would like to start by articulating what the standard is for dismissal. The standard is if there's been a violation of any constitutional right, the remedy is dismissal. It mandates dismissal. That is supported by CM. CM states that reversal is required if there's a violation of any constitutional right. Well, that may be a little overstated. After all, so long as none of the evidence that was adduced in violation of the JDA was allowed to be admitted, isn't that the prophylactic resolution here? Not entirely, sir. CM went a little farther in considering that in that, on the facts of that case, there was enough evidence to proceed against CM. But the Court's holding in that case was mandated not only by the Court's prior decisions in Doe in 1988 and Jose D.L., but the decision was explicitly rooted in the Court's obligations to safeguard the protections Congress specifically created and mandated for juveniles and to ensure that those protections not be eroded or neglected. Are any of the cases you cite cases in which the evidence obtained in violation of the Act was suppressed? In MRP, the government voluntarily elected to not use the statements. But in Doe 1988, the government didn't use the statements there either. They were actually brought in by the defense counsel on cross-examination. And I guess my question is this. The violation of constitutional rights, I take it, would be the introduction of a statement obtained in violation of the Constitution, wouldn't it? No. It would be the use of the statement obtained in violation of Miranda to charge him in the first place, which was a question specifically addressed in Jose D.L. And wrapping up briefly, I would like to touch upon the government response to the and point out that none of those factors that the government cited were referred to in the Court's ruling, supporting that it found A.L.E. credible. Additionally ---- Tell me where in the record I can find that the judge found him credible. It's implied in that he used A.L.E.'s version of the facts when he simply could have said, I don't find him credible, and then gives the reason for the sister state of mind as the reason for rejecting the defense. And I think I'm out of time here. Thank you. Thank you, Counsel. The case just argued will be submitted for decision.
judges: Piersol, O'scannlain, Hurwitz